on behalf of the people of the state of Illinois. The felony murder law in Illinois has a long reach. On its face, the law might allow a defendant to be found guilty of murder for any fatal assault without proving the mental state for murder. Charging a homicide as felony murder radically diminishes the state's burden. The Supreme Court is rightly concerned about the potential for abuse has limited the felony murder rule. This case involves these limits. After a shooting in a park, my client was charged with the felony murder of Mitchell Bear, a predicated and aggravated battery with a firearm. The trial of the state argued that there were two different intended murder victims, Mitchell Bear and Virgia Thomas. Neither of the alleged victims, however, could prove felony murder, so my client's conviction should be reversed. So the question is, I believe their argument is the fact that the time of the shooting was so close that that actually has an impact on our decision here? I think, as I read the briefs, they were to the contrary kind of arguing that there were separate purposes because there was a small separation in time between the shooting of Bear and the shooting of Thomas. Under the Morgan case, I think it is all part of the same shooting. The language in Morgan is that it was inherent in or arose from the shooting. In this case, the state's argument was that Mr. Bear was the target of the murder, and so after he was shot, any shooting of Thomas would have arose from that. The separation in space does help our argument with regard to approximate cause. The state argued that both Bear was the victim and that Thomas was the victim, but because Bear received a fatal shot before Thomas was shot, it couldn't have been the predicate. The state argued that felony murder was meant to deter felonies which lead to homicide, not homicides which lead to further felonies, and so that's a little bit about Thomas as a predicate, but the state also argued that Bear was the intended victim of the murder, and it's undisputed that felony murder could not be predicated on the aggravated burial with a firearm of Bear. It's the same act, same intent. There were no aggravated battery charges in which Bear was the victim. That's right. I'm sorry. That's right, Your Honor, but if you read the felony murder charge, which is what... There was no victim, was there? I agree. That's right, and under the Rosenfeld case, that's a strong indication that he was... But the Rosenfeld court kind of straightened that out and saw that the whole gist of where that went with the state in that case, and I think we can do that here, don't you think? I think that Thomas was the predicate felony involved here. That's not the... That was a... Of all the arguments made by the state, that was a minority of the arguments. Throughout opening statements, they argued, for instance, that my client's mission of murder was complete after Bear had been shot, which obviously doesn't involve Thomas at all. That indicates that the same intent, the same act... Well, that might be a different argument for you. Yeah, that's what I was going to say. You all are talking about two entirely different things. Your position is the state argued intentional murder from the beginning and at the end. That's what the record demonstrates. I think there was a shifting of arguments throughout between opening and between closing, but even in closing, both in the initial closing and the rebuttal, they were still arguing that Bear was the intended murder victim. There was still language about how the bullets were these messages of jealousy, and that was intended. That language follows the Rosenthal case very closely. In both cases, they argued that my client had a motive to kill and that he killed the victim in cold blood, and that's exactly what happened in Rosenthal. The court looked at the same language. In terms of the Rosenthal case straightening it out, in that case, there was a second victim that conceivably could have been predicated on, but the court looked at the language that was used by the state in its arguments and found that the argument that showed that the deceased was the intended victim of the murder showed that there was no valid predicate for felony murder. And so I think that doesn't seem to be disputed. It's only a question by the state that Bear would be an improper predicate. The only question is whether Thomas, the second theory that was argued, would be a valid predicate. And I think under the Morgan case, it wouldn't be. It was a case from the same shooting, and there was no connection. In this case, the homicide led to the felony rather than the felony led to the homicide. And I think there is a real question as to whether there is anyóalthough this isn't the focus of our argumentó whether there is any independent felony's purpose in shooting Thomas. In opening statements, the state argued that when he went to shoot Thomas by the car, because Thomas was helping Bear, that he was trying to shoot at Mitchell again, at Bear again. And so although our focus is on the approximate cause, there's not much of an argument for independent felony's purpose either. You keep referring to the opening argument and closing argument, but in the record, where can we look at in terms of the evidence that establishes that there was two independent shootings there? We look to the testimony of eyewitnesses. That's what we set out. There were various, as we argued in the second argument, there were discrepancies, but everyone seemed to agree that initially my client walked up and shot Bear when he was farther from Thomas. Thomas and his girlfriend were sitting at some tables, and Bear was on the path. He shot Bear several times, and the witness testimony on this is not clear, but Thomas testifies that he goes to help Bear. They go over to the car. The gun is jammed somehow, and he goes over and he shoots Thomas one time, and that separation shows that there's an approximate cause between the battery of Thomas and the killing of Bear because it preceded the gun. The issue about the gun supposedly jamming, and that's what caused the gap in time? Well, I think there was a gap in time as well. The grandfather was killed inside the house. The grandmother was killed leaving the house. I think as long as it's part of the same shooting, the purposes of the felony murder rule don't apply because you have the same potential for abuse that the state could avoid by approving any mental state, any of the traditional mental states for murder, intent, knowing, strong probability, by discharging this felony murder. I'm not sure where the state did this, but this is the route that they went, and under Rosenthal, if it was predicated on Bear, the conviction should be reversed, and under Morgan, if they predicate this, Thomas would ask that the conviction be reversed. What about the state's argument that this was unforfeited? This was not raised. This particular issue was not raised below. So this is a sufficiency of evidence argument, and as Your Honors are aware, you don't forfeit challenges to evidence based on bad arguments. Is it really the sufficiency of the evidence, or is it more of a legal question? Yes. That's a good point, Your Honor. The courts apply a de novo review, which normally is not the case for a reasonable doubt argument, but what they seem to be doing is applying a reasonable doubt standard. And it was looking at all of the evidence in the state, and they're rightmost favorable to the state, does this state a valid predicate? And so they did that in Rosenthal. They did that in Morgan. They did it in Davison. Davison. So in those cases, one of those cases found the issue was forfeited. It shouldn't be forfeited in this case. Even if it were a plain error clause, evidence as to whether there was a valid predicate was very close. In fact, if they heard one line of argument that was made by the state, it was unquestionably a valid argument that it was predicated on the barrier of bail. And obviously, the kind of substantial rights are implicated by an improper conviction, and conviction invalid legal theory. And so although the briefs do focus on kind of parsing the decisions in filing, it's a legal question in terms of forfeiture. It's a sufficiency of evidence question which cannot be forfeited. Mr. Onus, do you have any more questions? Thank you. Good morning. Good morning. May I please have the floor, counsel? Again, Matthew Congress on behalf of the people of the state of Illinois. Focusing on the defendant's only argument presented today, it's the people's position that the defendant's argument is not well-founded because as both a matter of law and as a matter of fact under these facts, aggravated battery with a firearm is a proper predicate for felony murder. There is some question about I want you to tell me why when the murder occurs before the felony, is it a proper predicate? It doesn't seem like it's a predicate. It seems like it happened after the murder to me. Sure, Your Honor. If the court wants to indulge in hypothetical, this court's law versus No, with these facts. With these facts, it's fine. But as a matter of law, because it's a question of fact and law that the court was struggling with just a minute ago, there is no legal prohibition that says that a murder that is followed by a felony cannot constitute a felony murder. Where's your proximate cause? Well, see, proximate cause is a very interesting question. You set in motion a chain of events that leads to the murder. How does shooting somebody ahead of time and then shooting at somebody or shooting at somebody set in motion a chain of circumstances that lead to the death? Okay, that's two separate questions. First, the question of proximate cause originally arose in Illinois based upon what's called the agency theory and the proximate cause theory. All of the cases that are cited by a defendant all involve another person, not the defendant at issue, as the person who caused the harm. We go through Lowery. We go through Deakins. We go all the way through the most recent cases, which were Klobinowski and Hudson for the Illinois Supreme Court. In each one of those cases, we talk about a co-defendant who commits the offense and whether or not the defendant is liable for that, or in those two most recent cases, an intended victim in an attempt to repel the initial felony, whether the intended victim's forceful response is what triggers the liability for the defendant. So that's where this notion of proximate cause comes in. And it must be noted that in each one of the cases cited by a defendant, they all involve a death caused by somebody other than the defendant. So the notion that we get into that here isn't quite the typical application of that. And if the court wants to indulge in that analysis, it's fine, because we have the testimony of Dr. Crowns. And Dr. Crowns says when the bullet perforated Mitchell's heart, blood flow was severe. He needed to get help quickly. And the reason he couldn't get help quickly was because this defendant continued to shoot. He shot the one person that was trying to get aid. He continued to shoot and prevented people from being able to get assistance. So we do have— Where was that argued below? Well, it wasn't argued below because that's not the issue. Because, again, the proximate cause theory doesn't really fit under these facts. If this court wants to look at the wide value of proximate cause, it doesn't apply when a defendant is the sole actor who's actually committed the offense, which is the subsequent murder. Again, I point to all the cases the defendant relies upon. So proximate cause, and you're saying under these circumstances, is not part of what needs to be proved? In any Illinois case, causation is an issue. The reason why we have this term proximate cause is because Illinois law was based, going back to Lowry and Hudson decisions, they talked about two different theories of legal liability. Agency theory, where you are only liable for those crimes committed by your agent in an ongoing felony. Or you have the proximate cause theory, which is the language which a defendant, a wrongful conduct whom he is legally responsible, sets in motion a chain of events which culminates in the death of the deceived. So those are two very different interpretations that the Illinois Supreme Court was asked to adopt. They adopted the proximate cause theory. So it's not the people's position that that's not a valid and premature law. It is. It's not been applied to a case like this. Are you saying that it should not be applied to a case like this? If the court wants to apply it, it's not the people's position that the proximate cause can be seen. And it was represented by the people in closing argument when they said, defendant shot at Virgil Thomas when he was trying to give aid, when he was trying to get material. Or he was trying to shoot an eyewitness. He argued in both. To the extent that there might be a dispute about argument, and again people understand that the Rosenthal decision does look at closing arguments. I point the court's attention to page K17 with regards to the defendant. He didn't stop. He continued to shoot at them as Virgil tried to carry Mitchell away. In opening clause, they discussed the aggravated battery instruction, and they said, however, that works if we've proven to you, which we have, that the defendant committed aggravated battery with a fire upon Virgil Thomas, and Mitch Ribeiro died during the course of events during that time. He was guilty of murder. So the people were explicit. They were tying the shooting of Virgil Thomas as he went to render aid to Mitch Ribeiro with the criminal liability in this case. Justice, as the court noted, there is no charge in the original charging document which ever indicated that aggravated battery stent to anybody other than Virgil Thomas. So there really wasn't a dispute down below. We can look at when the decision to not label charges was made, there was no exasperation, there was no explanation of surprise. We can look at the jury instructions conference. I'm surprised. I am. I would like to go back and shake the assistant state's attorney who nollied the intentional and knowing murder. Yes, Your Honor. To the extent that the prosecutors chose to do that, it's unclear even why in this record because this isn't the typical case where you'd say, well, it was done so in order to circumvent some sort of defense. There was no affirmative defense. Exactly. That's why. Why would they do that? It's just an aside. I understand, Your Honor. So the reason why there's so much ambiguity in this is because the court is being asked to call into question the question of law whether or not the legal principle, aggravated battery with a firearm can serve as a predicate for felony. Well, yeah. I'm not going to argue that. Okay. In a general world, that an aggravated battery with a firearm could serve as a predicate for felony. But the question is here, do these facts support our conclusion that the state proved a valid predicate felony? I think it's the people's position that because that is now a factional question that was left for the trial of fact and the light was favorable to the prosecution, could a jury determine under these facts that that's what occurred? And it's not just a question of causality. So you're saying that the medical testimony or evidence that Mr. Barrow was shot in the heart, we are to make a conclusion you found proximate cause because Thomas was unable to get him in the car and bring him. But it's not just the medical testimony. Putting aside the term proximate cause because that language is getting interwoven to something that wasn't an issue below. And again, it's unclear it's relevant. Now, the court asked about what facts do we have that can demonstrate that this defendant had an independent felony as purpose? Because the question for any felony murder is that it would be an accident. We're not in the proximate cause. We're not in the purpose. We're not in that category right now. Okay. We're talking about proximate cause. Okay. Now, the proximate cause in this case is that the defendant committed an act. There's no question the only defense was below. It wasn't me. We know that's not the case. The jury rejected that outright. The jury determined the defendant committed the act to what the shooting. The shooting prevented Mitchell Barrow from getting care. Now, we know that this is important because it shows that when defendant opened up his initial volume of shots, he could have shot at anybody. He solely could find his shooting to Mitchell Barrow. The gun jammed. The gun jamming gave time for people to flee. Virgil Thomas then went over to give aid. And it was only when Virgil Thomas was assisting Mitchell Barrow, the defendant shot at another person. And that's important because it does demonstrate the defendant's attempt to prevent anybody from assisting the initial victim. If the defendant was just shooting without cause, care, or reason, he could have shot the people who were standing right next to Mitchell Barrow at the time of the initial shooting. But he didn't. He waited until somebody went to give aid. And that's a very important distinction. What about the fact that when he got into the car, there was a young lady there also, and then he realized that they didn't have the keys, right? So then he goes and gets the keys, right? Yes, Your Honor. So following your theory, then if that's the case, then why didn't he shoot the young lady that was with Mitchell Barrow at the vehicle? Because the keys were on the other side of the car. No, but I'm following your theory in terms of providing aid. She was providing aid as well. If the court wants to parse out to such an extent. I'm not parsing out. I'm just following your theory, what you're presenting to us. No, the people's position is that there is nothing in the record to determine the defendant knew that when Virgil Thomas went around the car, he knew that that car door was broken, and that's why they had to get the keys. That's not something that a defendant would ordinarily know, that when a person goes around the car, that the car door is broken, that's why they couldn't get Mitchell Barrow into the car. So it's not a question of whether or not some other actor in some other place is the person who could have rendered more assistance if she could have tossed the keys across the hood of the car to make it happen quicker. That doesn't absolve the defendant for his guilt for shooting at a subsequent person. Okay, can I ask you, just so I understand, your argument is that the defendant's shooting at Thomas to prevent Thomas from taking Barrow to the hospital is the proximate cause that led to the death of Mr. Barrow. I mean, that's what you're arguing. A proximate cause is a term that is used to codify for set in motion a chain of events which culminates in the death of a decedent. One could say that the failure to give aid, the failure to get treatment in time, led to Mitchell Barrow's death. There's nothing in that sequence which would break the causal chain, because that's what proximate cause deals with. They say, is there some unforeseen circumstance, because he has not unforeseen, that you could foresee. He's supposed to, the person who's doing the shooting, well, in all the cases that, as you've discussed, the person that's doing the initial shooting is supposed to reasonably be able to see that someone may respond and an innocent person might have gotten shot or that kind of thing. But I'm having a real hard time understanding how, if the victim is already shot in the chest and is, I mean, in the heart and the diaphragm and the spleen and is bleeding, how the other person who gets shot after that, that shooting, or that felony, set in motion the chain of events that led to this person's death, other than you're saying he stopped them from going to the hospital and possibly getting aid that possibly could have saved his life. That argument is predicated on a number of premises, which just haven't been applied in the same circumstance. No, they have not. And that's the problem with the argument, as it's being presented, is, defendant's first position is, you can't have felony murder because the felony occurred after the shooting. We know that that's not true. I provide the quote with citations. They don't appear in the People's Brief. But this quote is well aware of the wider body of Illinois law, which says that it's called the afterthought defense. When I committed the initial murder, when I committed the initial beating, and I subsequently took money from the deceased person's pocket or took a watch off of a person's wrist. Courts have said that as a sufficient basis, you can have a felony murder conviction predicated upon a robbery, even when a robbery occurs after the death. And here, this court is now in a position. You need to give a citation. People can provide two citations right now. People versus Griffith, and that is. Did you say Griffith? Yes. Did you spell that? Yes. G-R-I-F-F-I-T-H. That is at 334, Billette 3rd, 98. People versus Stout, S-T-O-U-T. That is at 122, Billette 3rd, 254. And that's the 4th District in 1984. So once that premise is established, we see why the court. These are both felony murder cases. Yes. And there's actually a body of case that Evan Griffith relies upon, which discusses death penalty cases where they say death penalty should be imposed for a murder which occurs in the course of another felony. That's a whole other body of law that the people could brief if necessary. But it's really unnecessary to answer this question because this question says, if felony murder can properly be determined where the taking occurs after the death, this court's concern about the proximate cause theory really doesn't fit in that kind of analysis. And that's why the proximate cause theory is by defendant really doesn't come into play in this case. Again, it's worth noting that each one of those cases we have, and give the citation of those cases, in Brown, the most recent case, co-defendant was the driver of the car and the defendant alleged, you know what, I didn't know he was going to drive in a wild and erratic manner during their flight from the scene. I can't be held liable for his erratic driving which culminated with the death of the deceased. Lowering is the intended victim. That is a set in motion kind of thing. No, it's not because you have this. I haven't read the case, but you're saying somebody's erratically driving with somebody and they hit someone, you could foresee somebody's erratic driving would result in someone's death. And that's the people's position. It properly applies because it was another actor. It wasn't the defendant. And that's why the difficulty in the application of that is because all of these cases involve a third party, a co-defendant, an intended victim, somebody else taking an act where a defendant says, I'm not liable for the act of that person. I didn't know they were going to get involved. We don't have that here. We have a defendant who has committed the act himself, and he can't rely upon cases where a third party is the person who actually caused the murder. And that's why those proximate cause cases really don't fit under this factual scenario. This argument that you're making about the proximate cause and the failure to gain aid, is that in your brief? The failure to gain aid is, Your Honor, yes. Can you tell me where it is? I don't have a citation for that, but I know that the people specifically referred to arguments as rendered in the, as made by the people in their rebuttal arguments. The people specifically cite the remarks made in opening clause and rebuttal clause where the prosecutor said, defendant shot a firearm at Virgil Thomas which he knew and he knew. And in rebuttal clause, the people were specific and they said, regarding Virgil, he's a victim and he will never forget it because the defendant chose him to be a victim on that night. In the people's brief, the people highlighted, these are arguments that were done in the context of the independent felonious purpose. They were demonstrating. Yeah, you argued a lot in the felonious purpose part, but not in a proximate cause. Yeah, the people did not discuss the proximate cause and that's, I'm just trying to respond to the court's questions at this point. If there are no further questions, for all those reasons, in those statements in the people's brief, we ask that the court take them from the conviction. Thank you. Go back and give those lawyers in the courtroom the last time. Yes, Your Honor. Before you start, we're going to take a look at the cases that counsel has cited and if the court determines that they say what they actually say they say, then the court will notify you and provide you an opportunity to provide some cases as well.  Thank you, Your Honor. Without having read the cases based on opposing counsel's summary, it seems like those cases would be ones where there was an intention to rob initially and the chain of events would have led to the death, even if the taking itself occurred afterwards. I think in many of those cases you could easily just predicate an attempted robbery rather than robbery. But we'll certainly await Your Honor's guidance on that. The two other points I had, first to respond to opposing counsel's argument that proximate cause is only limited to cases involving co-defendants, that's not how the cases state the rule. They state it generally. It's a general rule of causation. Morgan cited that language and seemed to apply it in its holdings about the homicide needing to arise from the founding rather than vice versa. And Morgan was a case which only involved one shooter. The basis is, the purpose of felony murder, as I've repeated myself, is to deter these forcible felonies. And there's no reason there it would only apply in one context to cases involving co-defendants and other ones to where there was only one shooter. And my last point is responding to opposing counsel's argument that the delay in shooting Thomas delayed the treatment that Mr. Barrow could get. If you look at the medical examiner's testimony, it seems like he was grievously wounded as soon as the shot was fired, as soon as he was hit in the ventricle of his heart. The medical examiner testified there was tremendous blood loss. And the state did not prove, Barrow, that any delay caused it. They could have run an expert testimony to say that a few seconds would have made a difference, but they didn't, and there's no basis for that in the record. In Rosenthal, the court reversed the felony murder, but they found that there was the lesser-included offense had been proven. How does that finding in Rosenthal, how would that apply here? Should we find that the state failed to prove the predicate felony? Well, in a brief way, as for the conviction to be reversed and remanded for resentencing on aggravated battery, I was a little confused with the analysis of Morgan on this point because they seem to only assume in that case because the charge there was ambiguous that it could only be under, I think Griffin was the name of the second, the woman in the car in that case. Rosenthal, right? Rosenthal, I'm sorry, Rosenthal. But Tanya Griffin was the name of the second victim in Rosenthal. But, yeah, I would think that, in general, the predicate is the lesser-included offense of a felony murder, and that's why we asked for that relief. Mr. Anders, thank you. Okay, thank you. All right, the court wants to thank counsels, and the court will take this under advisement when we are adjourned.